# EXHIBIT B

# ARTICLES OF AGREEMENT

## BETWEEN

## UNITED UNION OF ROOFERS, WATERPROOFERS and ALLIED WORKERS LOCAL NO. 70

## AND

## BATTLE CREEK / KALAMAZOO AREA CONTRACTORS

JUNE 1, 2009
Through
MAY 31, 2011

# Index

Preamble ............................ ..................................................................................... 1
ARTICLE I .......................... Recognition, Union Shop, Dues, Initiation ............................ 1
ARTICLE II .......................... Territorial Jurisdiction ................................................... 1
ARTICLE III......................... Controlled Substance Abuse ............................................ 1
ARTICLE IV ........................ No Contracting Provision ................................................ 2
ARTICLE V ......................... Hours of Work ............................................................. 2
ARTICLE VI ........................ Wages and Benefits........................................................ 3
ARTICLE VII ....................... Overtime, Holidays, Working Conditions, Etc. ..................... 3
ARTICLE VIII..................... Shift Work.................................................................. 4
ARTICLE IX ........................ Travel Expense, Subsistence Pay........................................ 5
ARTICLE X.......................... Pay Day..................................................................... 5
ARTICLE XI ........................ Hiring and Referral ...................................................... 6
ARTICLE XII ....................... Superintendents............................................................ 7
ARTICLE XIII...................... Foreman .................................................................... 7
ARTICLE XIV...................... Kettlemen .................................................................. 8
ARTICLE XV ....................... Stewards ................................................................... 8
ARTICLE XVI...................... Discharge or Lay-off...................................................... 9
ARTICLE XVII .................... Working Rules ............................................................. 9
ARTICLE XVIII ................... Employee Training......................................................... 10
ARTICLE XIX...................... Employer Responsibilities ............................................... 10
ARTICLE XX ....................... Out of Area contractors.................................................. 11
ARTICLE XXI...................... Work Jurisdiction......................................................... 12
ARTICLE XXII ..................... Subcontracting ............................................................ 15
ARTICLE XXIII.................... Grievance Arbitration .................................................... 15
ARTICLE XXIV................... Strike and Lock-outs...................................................... 16
ARTICLE XXVI.................... Apprenticeship ............................................................ 16
ARTICLE XXVII ................. Piece-work, Tools, Crew size .......................................... 17
ARTICLE XXVIII ................ Mechanical Equipment ................................................... 18
ARTICLE XXIX................... Disclaimer of Union Liability........................................... 18
ARTICLE XXX .................... Performance Bond ........................................................ 18
ARTICLE XXXI.................... Vacation Fund............................................................. 20
ARTICLE XXXII ................. Insurance Fund............................................................ 21
ARTICLE XXXIII................. Pension Fund.............................................................. 21
ARTICLE XXXIV.............. Apprenticeship Fund...................................................... 21
ARTICLE XXXV .............. Research and Education Fund............................................ 22
ARTICLE XXXVI............... Funds Payment and Contributions: Reporting..................... 22
ARTICLE XXXVII ............. Favored Nations .......................................................... 23
ARTICLE XXXVIII ............. Disclaimer of Union Liability........................................... 23
ARTICLE XXXIX............... Entire Memorandum of Agreement ................................... 24
ARTICLE XL ...................... Termination of Agreement............................................... 24
ARTICLE XLI ...................... Signatures.................................................................. 24

THIS Agreement made and entered into this 1st Day of June 2009 by and between Battle Creek / Kalamazoo Contractors, hereinafter termed the "Employer"; and the UNITED UNION OF ROOFERS, WATERPROOFERS AND ALLIED WORKERS LOCAL NO. 70 hereinafter called the "Union".

WHEREAS, both parties are desirous of preventing strikes and lock-outs and other cessation's of work and employment: and of maintaining a uniform wage scale, working conditions and hours of employees of the Employer and of facilitating peaceful adjustment of all grievances which may arise between the Employer and its employees: and of promoting and improving peaceful industrial and economic relations between the parties. Now therefore, the parties hereto agree as follows:

## ARTICLE I
## RECOGNITION, UNION SHOP,
## DUES, INITIATION

SECTION 1.    The Employer voluntarily recognizes Local Union No. 70 as the exclusive bargaining agent for all journeyman roofers, damp and waterproofers, apprentices and new hires.

SECTION 2. Wherever the male gender is used in these Articles of Agreement, it shall be deemed to apply to the female gender.

SECTION 3. All present employees of the Employer covered by this Agreement who are members of the Union as of the date of execution of this Agreement shall, as a condition of continued employment within the bargaining unit, maintain membership in the Union to the extent of tendering the periodic dues and initiation fee uniformly required by the Union as a condition of acquiring and maintaining membership. All present employees of the Employer who are not members of the Union and all employees of the Employer hired after the execution date of this Agreement, within seven (7) days following the date of hire, as a condition of continued employment within the bargaining unit, maintain membership in the Union to the extent of tendering the periodic dues, assessments and initiation fees uniformly required by the Union as a condition of acquiring or retaining membership.

SECTION 4.    The Employer agrees to deduct from the pay of each employee all dues and/or initiation fees due the Union and pay such amount deducted to the Union for each and every employee provided the Union presents to the Employer authorizations signed by such employee allowing such deductions and payments to the Union. The Union shall notify the Employer of the specific amounts to be deducted   The Employer is responsible for submitting said authorizations for employees that are hired directly by the Employer.

## ARTICLE II
## TERRITORIAL JURISDICTION

SECTION 1. The following is the Territorial Jurisdiction of Local #70 for the purpose of this Agreement: Branch, Calhoun, Kalamazoo, St Joseph and Van Buren counties in the State of Michigan.

## ARTICLE III
## CONTROLLED SUBSTANCE ABUSE

As both the Union and the Employer concur and understand the necessity of a drug and alcohol free workplace, all employees of the Employer working in any capacity shall be subject to the M.U.S.T. Drug and Alcohol Screening Program guidelines. The Employer shall faithfully maintain the confidentiality of anyone tested.

1

## ARTICLE IV
## NO CONTRACTING PROVISION

It is hereby stipulated and fully agreed that under no circumstances will any member of the Union be permitted to do any type of work in direct competition with any signatory contractor to this Agreement. Violators of this Article shall be brought before the Executive Board for trial on these violations. The minimum fine for persons found guilty of these violations shall be five hundred dollars ($500.00).

## ARTICLE V
## HOURS OF WORK

SECTION 1. The Employer may choose from the following three (3) regular working day rules. The entire work week shall consist of the same hours of work.

The regular working day and week shall consist of one of the following.

A. Eight (8) hour labor between 8:00 a.m. and 4:30 p.m. The regular work week shall consist of five (5) consecutive eight (8) hour days, beginning with Monday and ending with Friday. All full-time or part-time labor performed during the hours specified herein shall be recognized as regular time and paid for at the regular hourly rate specified in this Agreement. All work over eight (8) hours in a day or forty (40) hours in a week shall be paid at the overtime rate. Saturday is the makeup day and shall be paid at the straight time rate.

B. The regular work week shall consist of five (5) consecutive nine (9) hour days, beginning with Monday and ending with Friday. All full-time or part-time labor performed during the hours specified herein shall be recognized as regular time and paid for at the regular hourly rate specified in this Agreement. The fifth (5th) day shall be a nine (9) hour day and all hours over forty (40) hours per/week shall be paid at the overtime rate. All work over nine (9) hours in a day or forty (40) hours in a week shall be paid at the overtime rate. Saturday is the makeup day and shall be paid at the straight time rate until over forty (40) hours apply.

C. The regular work week shall consist of four (4) consecutive ten (10) hour days, beginning with Monday and ending with Thursday. All full-time or part-time labor performed during the hours specified herein shall be recognized as regular time and paid for at the regular hourly rate specified in this Agreement. All work over ten (10) hours in a day or forty (40) hours in a week shall be paid at the overtime rate. Friday or Saturday may be used as the makeup day and shall be paid at the straight time rate until over ten (10) hours a day or forty (40) hours a week apply.

SECTION 2. To avoid adverse weather conditions the Employer and the employees may agree to change starting time in the morning.

SECTION 3. On approval of the Union, special permission may be granted to stagger starting time, provided two (2) distinct crews are used and each crew is under the direction of its own foreman. Starting time shall be between 5:00 a.m. and 8:00 a.m.

## ARTICLE VI
## WAGES AND BENEFITS

SECTION 1. Wages and Benefits shall be paid according to the appropriately dated Wage and Benefits "Schedule A"
Wage increases for June 1 for the following years of this Agreement are:

    June 1, 2010 - $0.50

SECTION 2. Piece-Work: There shall be no work by the members or applicants of this Local Union on a per-square or piece-work basis on any work covered by this Agreement.

SECTION 3. The parties further agree that any contractor performing work under this Agreement and working in a sister local's jurisdiction that has wages and/or fringes higher than those contained in these Articles of Agreement, such higher wages and/or fringes shall be paid as follows: If after paying into the fringe funds referenced in Articles XXXI, XXXII, XXXIII, XXXIV and XXXV of this Agreement and after matching the wage rate of the sister local, the total wage package is still below that of the territory where the work is being performed the difference shall be paid to the Local 70 Pension Fund on the Differential Reporting Form.

## ARTICLE VII
## OVERTIME, HOLIDAYS, WORKING CONDITIONS, ETC.

SECTION 1. It is hereby agreed that all labor in connection with incidental to work covered by this Agreement shall be performed within the hours specified in Article IV, Section 1. In all cases where work is permitted outside the regular working hours, Time and One-Half (1 ½) shall be paid for each hour worked.

SECTION 2. For the purpose of this Agreement, legal holidays shall include: Independence Day, Labor Day, Thanksgiving Day, Christmas Day, New Years Day, and Memorial Day.

SECTION 3. If any of the above holidays fall on a Saturday, the Friday shall be considered the holiday, or if any of the above holidays fall on a Sunday, Monday shall be considered the holiday, and if work is performed the rate shall be Double Time (2x).

SECTION 4. Holiday work will not be permitted unless a written request is made by the Employer two (2) days prior to such holiday and said request is granted by the Union. Sunday work will not be permitted unless a written request for such work is presented to the Union on the Friday proceeding the day requested. In emergencies, a telephone call to the Union Office during its regular business hours for permission will suffice.

SECTION 5. The Double Time rate for all employees shall be paid for all hours worked on Sundays and holidays.

SECTION 6. The Employer agrees that in the event Sunday or holiday work is requested on a job in operation, the men assigned to the job during the week shall have preference on all Saturday, Sunday, holiday or overtime work.

SECTION 7. The Employer agrees to furnish cold drinking water facilities and sanitary cups on all job sites.

SECTION 8. Employees shall be permitted to a ten (10) minute break in work at the end of the second (2nd), sixth (6th), and eighth (8th) hours worked. Employees shall be permitted a thirty (30) minute unpaid lunch break in the middle of the work day.

A. Employees shall be permitted five (5) minutes before lunch to clean up and they shall be permitted five (5) minutes before quitting time to pick up their personal tools. No employee shall be permitted to leave the job site where he is working prior to the end of the work day without special permission from the job foreman.

SECTION 9. When employees are requested to report to the job, they shall be there at the regular starting time of 8:00 a.m. (except summer hours) and stay there until the end of their work day. When requested to report first to any shop or warehouse, they are not required to report until the established starting time. Their pay shall start from said shop or warehouse, and continue on the job until the regular quitting time, providing that the employee does not have to report back, to where he started. If a member is driving a company truck, he shall be paid from shop to shop with time and one-half (1 ½) the hourly rate of pay if he works past the regular established quitting time.

## ARTICLE VIII
## SHIFT WORK

SECTION 1. On jobs where it is necessary for two (2) shifts to operate, the following schedule shall apply:

A. The first shift must be the day shift, with the Regular Rate of pay. Between October 1st and April 30th, the regular working hours of 8:00 a.m. to 4:30 p.m. shall be in effect.

B. The second shift will start at 4:30 p.m. and end at 12:30 a.m. with one half (1/2) hour for lunch. The second shift employees shall receive twenty-five cents ($0.25) per/hour shift premium.

Between May 1st through September 30th, crew may start as early as 5:00 a.m. The second shift shall start at the end of the first shift's established quitting time. The second shift employees shall receive a twenty-five cents ($0.25) per hour shift premium.

SECTION 2. On jobs requiring THREE (3) shifts, the following schedule shall apply:

A. SHIFT NO. 1  8:00 a.m. – 4:30 p.m. 30 minutes paid lunch. Regular Rate of pay.

B. SHIFT NO. 2  4:00 p.m. – 12:00 Midnight 30 minutes paid lunch, with twenty-five cents ($0.25) per hour shift premium.

C. SHIFT NO. 3  12:00 Midnight – 8:00 a.m. 30 minutes paid lunch, with fifty cents ($0.50) per hour shift premium.

SECTION 3. When shift work is required, the minimum crew per shift consists of three (3) men composed of a foreman and at least two (2) journeymen.

SECTION 4. No employees shall work more than ten (10) hours within a twenty-four (24) hour period , no more than ten (10) hours may be worked before the overtime rate is paid.

4

SECTION 5. All Federal, State and Local wage and hour rules and regulations shall apply to this Agreement and shall be in addition to the provisions herein.

## ARTICLE IX
## TRAVEL EXPENSES AND SUBSISTENCE PAY

SECTION 1. Smith-Graham travel pay shall be based from the Battle Creek City Hall.

The Free Zone shall have a radius of approximately twenty-five (25) miles from the Court House,

ZONE ONE- a maximum radius of thirty-five (35) mils with travel expenses of SEVEN DOLLARS ($7.00) per day.

ZONE TWO – A MAXIUMU RADIUS OF FOURTY-FIVE (45) miles with the travel expenses of ELEVEN DOLLARS ($11.00) per day.

ZONE THREE – a maximum radius of SIXTY-FIVE (65) miles with travel expenses of TWENTY-FOUR DOLLARS AND NINETY-SEVEN CENTS ($24.97) per day. Contractors having offices outside our jurisdiction shall use the Kalamazoo Area zoning map.

If adverse weather prohibits the start of work in travel zone (1), (2) or (3) travel expenses will not be paid, unless the employee is instructed to go to the job, by the Employer/or its representative.

SECTION 2. Workmen on jobs located beyond ZONE THREE (up to 150 miles) shall have travel expenses paid at the rate of FIFTEEN CENTS ($.15) per mile (one-way distance to be measured from the Battle Creek City Hall). Said travel time shall be paid weekly for the return trip only, when the job is completed or when ordered to return by the Employer. Workmen who quit shall not be entitled to any travel expenses.

   A. These employees shall also be paid subsistence in the amount of THIRTY-SIX DOLLARS and EIGHTY-NINE CENTS ($36.89) per day, provided the employee reports for work at the regular starting time the following day. Said subsistence shall be paid on a five (5) day week, all holidays included.

   B. On all jobs beyond the ONE HUNDRED FIFTY (150) mile limit, subsistence shall be paid on a SEVEN (7) day week, holidays included. This subsistence shall be THIRTY-SEVEN DOLLARS and FOURTY-SIX CENTS ($37.46) per day on a seven (7) day week. They shall also receive FIFTEEN CENTS ($.15) per mile one-way when job is completed or ordered to return home.

   C. Subsistence shall be paid for each day whether worked or not provided however the employee is available for work at the established starting time on the job each day.

## ARTICLE X
## PAY DAY

SECTION 1. Wages at the established rate as specified herein shall be paid in cash, check or by Direct Deposit on the regular established weekly pay day; except that when an employee is either discharged or laid off: the Employer shall have twenty-four (24) hours from payday (as reported to the Union) to overnight mail, or pay in person the employee(s) discharged or laid-off. If payment is made after the twenty-four (24) hour period or if the employee is required to report to the Employer's office, the Employer shall pay the employee an additional two (2) hours pay. If the employee is required to report to the Employer's office and the Employer's Office is outside the Unions territorial jurisdiction the Employer shall pay the employee an additional four (4) hours pay to compensate the employee for his travel.

SECTION 2. All Employers covered by this Agreement shall state their established payday to the Union Business Office.

A. Foremen shall receive all paychecks on the established payday on the job and distribute them prior to the established quitting time.

B. If the Employer fails to have the checks on the job by the end of the working payday, the employees shall be paid for all the time waiting for same.

C. In the event that a pay day falls on a legal holiday, or the day celebrated as such pay shall be delivered to the employees on the day before the holiday or the day the holiday is celebrated as in Article VII, Section 3.

SECTION 3. If bad weather stops work prior to the end of the working pay day and the checks are not on the job, and the workers are requested to go to the Employer's Office that day to get them, they shall be paid an additional two (2) hours pay if for local Employer, four (4) additional hours pay if the office is outside the jurisdiction as called for in SECTION 1 of this ARTICLE.

SECTION 4. The Employer shall furnish each employee with an itemized check stub or voucher, showing the total hours worked, wage rate, authorized deductions, premium time hours (overtime) and the listing of all other expenses and deductions.

SECTION 5. The Business Manager shall be permitted to examine any employee's pay check at any time to assure himself that the proper wage rate is being paid, especially for overtime hours. If in his belief, the employee is not receiving the proper wage rate for the hours worked he shall demand that the employee involved appear before the Executive Board of this Union and that he bring his pay stub.

SECTION 6. The Business Manager shall notify the Labor Board of any irregularities found by him in any overtime not accounted for on the check stub, also the wage rate being paid the employee and/or employees.

## ARTICLE XI
## HIRING AND REFERRAL

SECTION 1. In the employment of Journeymen Roofers and Waterproofers, Apprentices and New Hires for all work covered by this Agreement the following provision shall govern:

A. The Union shall establish and maintain an open and non-discriminatory employment list of qualified Journeymen Roofers and Waterproofers, registered and probationary apprentices who make application for a place on the list.

B. Whenever an Employer desires to employ journeymen roofers/waterproofers or apprentices it shall call upon the Union stating the number required. The Employer shall give the Union at least twenty-four (24) hours (weekends excluded) to secure the roofers needed. The roofers/waterproofers, apprentices or new hires must receive a referral signed by the Local Union and the worker before starting work.

C. Whenever after reasonable notice of twenty-four (24) hours the Union is unable to furnish a sufficient number of journeymen roofers/waterproofers, apprentices or new hires the Employer

6

may secure them from other sources. The Employer will notify the Union within twenty-four (24) hours the name, social security number, phone number and address of any employee hired.

D. The Union will furnish each journeyman roofer and waterproofer or apprentice entered on the list to the Employer as described in the "Out of Work List Rules".

SECTION 2. The Employer shall place in a conspicuous place a copy of this Agreement outlining all provisions relating to the functions of the hiring arrangements and the safeguards essential to the legality of an exclusive hiring agreement.

SECTION 3. The Union agrees to furnish at all times to the Employer duly qualified journeymen roofers and waterproofers, registered apprentices and probationary workers in sufficient numbers to properly execute the Employers work in the manner and under the conditions specified in this Agreement. It is understood that the Union's responsibility hereunder is limited to referring workmen who are adequately skilled in the trade, and the Employer agrees that Union will not be held responsible for the acts, tortuous or otherwise, or failure to act of those if refers.

## ARTICLE XII
## SUPERINTENDENTS

SECTION 1. Superintendent shall be defined as any employee who instructs, places and/or relays Employer's instructions to foreman or other employees covered by this Agreement; superintendents are employees who are authorized to hire, lay-off, discharge and/or contact the Union for placement of their members.

SECTION 2. The Employer agrees that a superintendent shall be allowed to instruct employees on the job, and agrees that no superintendent will be permitted to work in competition with a member of the Union.

SECTION 3. The Employer, when requested by the Union, will state in writing all employees classified as superintendents.

SECTION 4. The Employer agrees that the hours worked by the Union members classified as superintendents may be contributed for the funds included in this Agreement.

SECTION 5. Superintendents shall be allowed to make emergency repairs, provided, however no hot bitumens are used.

## ARTICLE XIII
## FOREMAN

SECTION 1. Employer agrees that whenever two (2) or more men are used on a job covered by this Agreement, a journeyman roofer shall be designated as a working foreman and shall be paid the foreman's rate of pay.

SECTION 2. The working foreman shall be the agent of the Employer, such individual shall not exercise any of the functions customarily exercised by supervisors as defined in the National Labor Relations Act, as amended, nor shall such individual or individuals in any way be deemed an agent of the Union.

7

SECTION 3. If paychecks are distributed at the jobsite the foreman shall receive all paychecks on the established and announced pay day and distribute them prior to the established quitting time.

SECTION 4. The foreman, on behalf of the Employer shall see that members properly and satisfactorily execute and complete their work.

## ARTICLE XIV
## KETTLEMEN

SECTION 1. Kettlemen may start up to two (2) hours earlier than the agreed starting time.

A. No inexperienced employee shall be permitted to operate a kettle or tanker in the jurisdiction of the Union, unless accompanied by a journeymen kettleman.

SECTION 2. Both the Employer and this Union agree to comply with all Federal, State, City and County Regulations regarding construction safety, inexperienced operators, unattended kettles and related equipment. It is understood however, that it shall be the responsibility of the Employer to insure compliance with all governmental and contractual standards.

SECTION 3. The minimum rate of pay for a Kettle Operations shall be fifth (5th) class pay.

## ARTICLE XV
## STEWARDS

SECTION 1. The Employer agrees to permit the Union to appoint from the membership on any job one (1) journeyman to act as steward to look after the interests of the Union. The Union through its Business Manager, reserves the right to relieve any steward from his duties and appoint another in his/her place when he deems it to be in the best interest of the Union.

SECTION 2.
A. The steward shall be a working journeyman, and none of his responsibilities to the Union shall interfere with the proper performance of his/her work under the direction of the foreman.

B. The steward shall not be assigned to duties, which will not allow him to consult with the foreman and report violations of the safety requirements.

C. If the foreman and the steward cannot agree on what is unsafe equipment or unsafe working conditions, or if having agreed, action to correct same is not taken by the foreman or Employer, the steward must immediately make a report to the Union. It is understood however, that it shall be the responsibility of the Employer to insure compliance with all governmental contractual safety standards.

The Employer agrees that the steward shall not be discriminated against for performing his duties as a steward.

SECTION 3. The Employer agrees that it shall not lay-off the steward until the job is completed.

SECTION 4. The steward shall check the foreman's time book at the end of the working day to see if the men are properly accounted for.

# ARTICLE XVI
## DISCHARGE OR LAY-OFF

SECTION 1. When an employee is requested to report to the Employer's Office by either the superintendent (or foreman on the job) at the start of or during the normal working hours for either discharge or lay-off, the Employer agrees to pay said employees a minimum of two (2) hours pay, plus travel pay (if said job is outside of the free zone) and also all actual hours he worked. If the Employer's Office is outside the free zone, the employee shall receive four (4) hours of his minimum rate of pay, plus all actual hours worked

SECTION 2. If any employee is requested at the end of a working day not to report back to the same job and/or is not assigned to another job, he shall be considered laid-off due to lack of work.

SECTION 3. Employees who are either discharged or laid-off shall be given a separation slip (as furnished by the Union, and signed by any authorized personnel of the Employer) giving the reason for the action.

SECTION 4. If at some future date the Employer wishes to re-employ any former employee, this Union will refer said employee to the Employer, providing he/she is on the Out of Work List in proper order.

SECTION 5. If an employee is absent from his job on three (3) consecutive working days without having notified his foreman or his Employer, the employee may be considered a voluntary quit.

SECTION 6. The Employer shall have the right to discharge or reprimand any employee for just cause, but this Union demands that a separation slip which is furnished by this Union be properly filled out giving full details for the discharge. This Union reserves the right to call all of its members from the employ of any Employer who has discharged or threatened any employee for Union activity or the refusal to work on straight time Sundays, legal holidays, or days celebrated as such. Any employee shall have the right to know just why he was discharged, and this Union intends to protect that right.

SECTION 7. The Employer may, subject to the grievance procedure provided in the Agreement, "during the first (1st) twenty-four (24) hours of an unauthorized work stoppage" discipline (short of discharge) any employee who is at fault, after said twenty-four (24) hours, in the event that the work stoppage has not ceased and he has checked the rest of his employees (who might be at fault), the Employer may then discipline or discharge said employee (subject to conditions in Section 6 of this ARTICLE and the above mentioned grievance procedure). This shall constitute the Employer's sole and exclusive remedy under this Agreement

# ARTICLE XVII
## WORKING RULES

SECTION 1. All members of the United Union of Roofers, Waterproofers and Allied Workers of which Union Local 70 is a part, shall carry on their person an official receipt covering the current month as a condition of employment in the jurisdiction. Any said employee who fails to produce the current official receipt within two (2) days will be removed from any job in our territory.

SECTION 2. New Hires or applicant members shall also carry on their person an official receipt dated from the last payroll deduction.

SECTION. It is stipulated and agreed that the Employer, upon official notice from the Business Manager of the Union, will remove any employee who is in violation of Section 1 and/or 2 above, so that no stoppage in work will be necessary in order to obtain compliance.

SECTION 3. Under no circumstances will a member of this Union be permitted to work for less than the minimum scale of wages as established in the Wage and Benefits "Schedule A" (ARTICLE VI).

SECTION 4. The Union agrees to furnish each member with a copy of this Agreement.

## ARTICLE XVIII
## EMPLOYEE TRAINING

Section 1. There shall be mandatory training for each employee on a yearly basis which consists of thirty-two (32) hours per year excluding M.U.S.T. training. The first sixteen (16) hours of training is unpaid. The second sixteen (16) hours shall be paid at a flat rate of eighty (80) dollars per full eight (8) hour day, and forty (40) dollars per four (4) hour half day, for journeyman and foreman and fifty (50) dollars per full day and twenty-five (25) dollars per half day for apprentices.

Section 2. If the contractors are assessed a MIOSHA minor violation due Union member's disregard for personal safety, the members may be brought before the Executive Board who shall have the authority to impose a fine not to exceed fine imposed by MIOSHA. The Employer must furnish documentation of the date, time and place the member received proper training to MIOSHA standards before the member is brought before the Executive Board. It is agreed by and between the parties hereto that the Union nor the Union's officers and agents shall not be liable in any manner whatsoever, either at law or in equity, for any decision or action taken by the Executive Board. This matter is not subject to Grievance-Arbitration. It is understood, however that this Union shall assume no responsibility to insure compliance with MIOSHA regulations.

## ARTICLE XIX
## EMPLOYER RESPONSIBILITIES

SECTION 1. The Employer agrees that it will not perform work within the geographical jurisdiction of the Union through or by another firm, company, co-partnership, corporation or joint venture controlled by the Employer for the purpose of evading any of the provisions of this Agreement.

If the Union feels that an Employer is attempting to evade any of the provisions of this Agreement it shall have the right to fully investigate the matter to include a full disclosure audit. If the Union, based upon evidence produced by its investigation, reasonably determines that the Employer's actions are for the purpose of evading any of the provisions of this Agreement, the Union shall on forty-eight (48) hours written notice have the right to strike that contractor. A contractor who knowingly and willfully violates this Agreement to evade proper payment to the Union and its Benefits Funds shall use all legal means to bring the employer into full compliance. The cost of such actions used by the Union will be borne by the Employer.

SECTION 2. The Employer hereby agrees that only one owner, partnership owner, corporation officer, closed family stockholder, or cooperative member may perform any manual roofing work on any job covered under this Agreement.

SECTION 3. This Agreement shall be binding upon the Employer and its successors and assigns, and the Union and its successors and assigns.

SECTION 4. The Employer must deposit with the Union a certificate to show that the Employer currently carries State Compensation Insurance or other Compensation Insurance, and that it is currently covered under the Michigan Employment Security Act. In addition, each Employer shall provide the Union with its FEIN number and any license numbers required by City, County State or Federal laws. The information called for in this Section of the Agreement shall be attached to this Agreement. The Employer must keep the insurance required herein and the proof of insurance certificates current. The Union may demand to see it all certificates upon twenty-four (24) hours notice.

## ARTICLE XX
## OUT OF AREA CONTRACTORS

SECTION 1. When a non-local contractor who is a co-signer to this Agreement works in the jurisdiction of the Union it shall notify the Union by telephone or in writing two weeks prior to the start of the job (including set up of the job) of their intention to conduct work within the jurisdiction of Local 70. On jobs that require mandatory training or testing, the contractor must provide the Union with four (4) weeks notice prior to starting the job. Each non-local contractor agrees to abide by the majority ratio rules (one (1) employee from the Employer to one (1) employee of the Union) on any job. If the non-local contractor fails to give the Union forty-eight (48) hours advance notice then any loss of work hours calculated under the majority ratio rule for members of the Union shall be made up by either having Local members working extra hours: or having additional Local members manning the job. All mandatory training including M.U.S.T. is to be paid for by the contractor who has been awarded the work. Mandatory drug testing will be paid by the contractor and the roofer who is being tested shall be paid his full hourly and fringe benefit rate for all time spent for such testing including travel time.

SECTION 2. When a non-local contractor who is a co-signer to this Agreement works in the jurisdiction of the Union, it shall notify the Union by telephone or in writing two (2) weeks prior to the start of the job (including set up of the job) of their intention to conduct work within the jurisdiction of Local 70 and within forty-eight (48) hours (weekends excluded) prior to any work being performed on the job. Each non-local contractor agrees to abide by the majority ratio rules on any job. If the non-local contractor fails to give the Union forty-eight (48) hours advance notice, then any loss of work hours calculated under the majority ratio rule for members of the Union shall be made up by either:

(1) having Local members working extra hours: or
(2) having additional Local members manning the job.

SECTION 3. On any job within the Unions jurisdiction performed by a non-local contractor, one of the journeyman sent to the job as referred to above shall be appointed as foreman (to represent the Union members on the job). The appointed foreman will remain as part of the crew necessary to finish the job, and he shall receive foreman wages.

SECTION 4. The Union will furnish a copy of this Agreement for the visiting foreman from each non-local contractor who becomes signatory hereto by Letter of Assent/Memorandum. Each non-local contractor shall post a copy of this Agreement as a notice on its bulletin board. All contractors who become signatory hereto by Letter of Assent/Memorandum shall also receive a copy.

SECTION 5. On jobs by our outside area contractors, their foreman shall be regarded as their local representative and in charge of the job. Both he and his Employer shall abide by the choice of and/or removal of the foreman and/or steward selected to represent this Union. The appointed Foreman will be a working foreman in accordance with this Agreement in every way.

11

SECTION 6. All visiting foreman of non-local contractors are required to report in person or by phone to our Union Office, before starting work and to check on his workers clearance card. The Local 70 phone number is (517) 548-6554.

# ARTICLE XXI
## WORK JURISDICTION

SECTION 1. The International Union shall be composed of and have jurisdiction over all Local Unions, and their membership composed of skilled roofers and damp and waterproof workers, including apprentices, allied workers, other classifications of workers and any person performing the duties of all safety monitoring of work performed within the jurisdiction of this Article. The work jurisdiction of this International Union shall be all roofing and waterproofing systems or products whenever the primary function of such systems or products is to prevent the intrusion or migration of moisture. These systems or products shall include but not be limited to all those outlined in this Article.

SECTION 2. Steep roofers shall include in their work jurisdiction the following work processes and types of materials including but not limited to:

All slate where used for roofing of any size, shape or color, including flat or promenade slate, with necessary metal flashing to make water-tight.

All tile where used for roofing of any size, shape or color, and in any manner laid including flat or promenade tile, with necessary metal flashing to make water-tight.

All asbestos shingles where used for roofing of any size, shape or color, and in any manner, laid with necessary metal flashing to make water-tight.

All cementing in, on or around the said slate or tile roof.

All laying of felt, paper, membranes, ice and water shields, vapor barriers or similar underlayments on sloped roof structures.

All forms of composite insulations having nailable surfaces (e.g. plywood, pressboard, chipboard, drywall or other laminates) bonded to the insulation wherever such composite insulations are used as an integral thermal insulating component of the roofing system.

All dressing, punching and cutting of all roof slate or tile.

All operation of slate cutting or punching machinery.

All substitute material taking the place of slate or tile, such as asbestos slate or tile, cement or composition or Spanish tile, composition or wood shingles, or shakes, metal shingles and tile, or other substitute materials used on steep roofs.

All removal of slate or tile roofing as defined above when a roof is to be reapplied in their place.

All solar or photovoltaic cell-type shingles used to transform solar energy to electrical energy.

All removal of roofing including but not limited to the materials defined above when a roof is to be replaced.

SECTION 3. Composition roofers shall include in their work jurisdiction the following work processes and types of materials including but not limited to:

All air barriers that are applied with materials that are traditionally used on roofing, waterproofing and dampproofing systems, including but not limited to sprays, epoxies, membranes and bituminous products.

All organic or inorganic felts and fabrics that comprise the reinforcing membrane of built-up roofing and waterproofing systems.

All waterproofing using bituminous products whether structures are above or below grade.

All forms of plastic, slate, slag, gravel, or rock roofing, including all types of aggregates, blocks, bricks, stones or pavers used to ballast or protect built-up roofing systems or protect Inverted Roof Membrane

12

Assembly (IRMA) roofs, or roofs of similar construction where the insulation is laid over the roof membrane.

All kinds of asphalt and composition roofing and waterproofing.

All base flashings, curb flashings, and counterflashings of bituminous composition used to roof or waterproof intersections of horizontal surfaces.

All components of composition roofing systems used to seal the roof, including but not limited to compression seals, termination bars, lath, roof cement and reinforcements, caulking and sealants.

All kinds of coal tar pitch and coal tar bitumen roofing and waterproofing.

All cleaning, preparing, priming and sealing of roof decks and surfaces that receive roofing, dampproofing and/or waterproofing. All rock asphalt and composition roofing.

All epoxy materials used for roofing and waterproofing.

All rock asphalt mastic when used for damp and waterproofing. All prepared paper roofing.

All laying of felt, paper, membrane, ice and water shields, vapor barriers or similar underlayments.

All mineral surfaced roofing, including 90lb., and SIS, whether nailed, mopped with bitumen, or applied with mastic or adhesive.

All compressed paper, chemically prepared paper, and burlap when used for roofing, or damp and waterproofing purposes, with or without coating. All substrates used on the roof deck for fireproofing or any materials used as a support or nailing surface for the roofing system over the deck. All damp resisting preparations when applied with a mop, brush, roller, swab, trowel, or spray system inside or outside of any structure. All damp course, sheeting or coating on all foundation work. All tarred floors.

All wood block floors that are set in and/or coated with bituminous products.

All waterproofing of shower pans and/or stalls.

All laying of tile, wood block or brick, when laid in pitch, tar, asphalt mastic, marmolite, or any form of bituminous products.

All lining and/or waterproofing of reservoirs, holding ponds, waste treatment structures, landfills, fountains, planter boxes and similar structures regardless of the material being used.

All forms of insulation used as a part of or in connection with roofing, waterproofing or dampproofing, including but not limited to thermal and/or acoustical purposes.

All forms of composite insulations having nailable surfaces (e.g. plywood, pressboard, chipboard, drywall, or other laminates) bonded to the insulation wherever such composite insulations are used as an integral thermal insulating component of the roofing system.

All forms of protection boards, walkway pads and roof treads used in composition roofing or waterproofing to protect the membrane from damage.

All types of coatings, toppings and finishes used on the roof surfaces.

All components of "living roof" systems, including but not limited to membranes, insulations, filters, fleece, vegetation blankets, plantings and soils.

All solar or photovoltaic cell-type structures that are used as substitutes for ballast or membrane protection.

All solar or photovoltaic cell-type roof membranes used to transform solar energy to electrical energy.

SECTION 4. Composition roofers shall also include in their work jurisdiction the following work processes and types of materials including but not limited to:

(1) All forms of elastomeric and/or plastic (elasto-plastic) roofing systems, both sheet and liquid applied, whether single-ply or multi-ply. These shall include but not be limited to:

a) PVC (Polyvinyl chloride systems)

b) Butyl Rubber

c) EPDM (ethylene propylene diene monomer)

d) PIB (polyisobutylene)

e) CPE (chlorinated polyethylene)

f) CSPE (chlorosulfonated polyethylene)

g) Modified bitumens

h) Neoprene

i) NBP (Nitrile Alloy)

j) EIP (Ethylene Interpolymers)

k) TPO (Thermoplastic Polyolefins)

(2) All base flashings, curb flashings and counterflashings of elastoplastic composition as outlined in Section 4(1) used to roof or waterproof intersections of horizontal surfaces.

All components of elasto-plastic roofing systems used to seal the roof, including but not limited to, compression seals, termination bars, caulking, and sealants.

(3) All insulations applied with the above systems, whether laid dry, mechanically fastened, or attached with adhesives.

(4) All forms of composite insulations having nailable surfaces (e.g. plywood, pressboard, chipboard, drywall, or other laminates) bonded to the insulation wherever such composite insulations are used as an integral thermal insulating component of the roofing system.

(5) All types of aggregates, blocks, bricks, stones, pavers or units of photovoltaic cell construction used to ballast or protect these elastoplastic systems.

(6) All solar or photovoltaic cell-type roof membranes used to transform solar energy to electrical energy.

(7) All types of aggregates, blocks, bricks, stones, pavers or units of photovoltaic cell construction used to ballast or protect Inverted Roof Membrane Assembly (IRMA) roofs, or roofs of similar construction where the insulation is laid over the roof membrane.

(8) All sealing and caulking of seams and joints on these elasto-plastic systems to ensure water-tightness.

(9) All liquid-type elasto-plastic preparations for roofing, damp or waterproofing when applied with a squeegie, trowel, roller or spray equipment, whether applied inside or outside of a building.

(10) All sheet-type elasto-plastic systems, whether single or multi-ply for waterproofing either inside or outside of any structure.

(11) All cleaning, preparing, priming and sealing of surfaces to be roofed, dampproofed or waterproofed, whether done by roller, mop, swab, three-knot brush, squeegie, spray systems or any other means of application.

(12) All types of pre-formed panels used in waterproofing (Volclay, etc.).

(13) All applications of protection boards to prevent damage to the dampproofing or waterproofing membrane by other crafts or during backfilling operations.

(14) All handling of roofing, damp and waterproofing materials.

(15) All hoisting and all storing of roofing, damp and waterproofing materials.

(16) All types of spray-in-place foams such as urethane, polyurethane, or polyisocyanurate, the machinery and equipment used to apply them, and the coatings that are applied over them.

(17) All types of resaturants, coatings, mastics and toppings when used for roof maintenance and repairs.

(18) All wrapping and/or coating of underground piping with bitumastic enamel or cold process, polykin tape, tapecoat, or other asphaltic coatings or tapes and the preparation of surface by sand blasting or wire brushing.

(19) All operation of jeeper or holiday detectors.

(20) All materials laminated to roofing and/or insulation systems.

(21) All substrates used on the roof deck for fireproofing or any materials used as a support or nailing surface for the roofing systems.

(22) All air barriers that are applied with materials that are traditionally used on roofing, waterproofing and dampproofing systems, including but not limited to sprays, epoxies, membranes and bituminous products.

SECTION 5. All tear-off and/or removal of any type of roofing, all spudding, sweeping, vacuuming and/or cleanup of any and all areas of any type where a roof is to be relaid, or any cleanup of any materials on any

14

construction site and operation of equipment such as kettles, pumps, tankers, or any heating devices that are used on roofing or waterproofing systems coming under the scope of jurisdiction as outlined in Article II.

SECTION 6. All substitutions, improvements, changes, modifications and/or alternatives to the jurisdiction or materials set out in this or any other Article.

SECTION 7. All other materials, equipment and/or applications necessary or appropriate to complete, perform or apply the processes and/or materials in this Article.

SECTION 8. All components for all types of roofing and roofing systems covered in this Article used to cap, enclose or seal the roof, including but not limited to, compression seals, copings, counterflashings, termination bars, lath, roof cement and reinforcements, caulking and sealants in order to make a ware-tight project

## ARTICLE XXII
## SUBCONTRACTING

The Employer shall not subcontract, transfer or assign in whole or in any part, any jobsite work covered by this Agreement to any person, firm, corporation or other entity (subcontractor) unless the subcontractor is a party to a collective bargaining agreement with the Union claiming jurisdiction of the work involved as stated in Article XXI. "Jobsite" refers to any site where construction, alteration or repair of a building or structure, or other work is being carried on.

## ARTICLE XXIII
## GRIEVANCE ARBITRATION PROCEDURE

SECTION 1. All grievances or disputes relating to interpretation of or adherence to this Agreement shall be submitted to an authorized representative of the Union. To be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or, within thirty (30) calendar days of when the grievant knew or should have known of the facts giving rise to the grievance. The authorized Union representative shall present the grievance to the Employer. The parties shall attempt to settle such grievance or dispute, if possible, within forty-eight (48) hours. If they were unable to arrive at a settlement within the forty eight (48) hours, the matter shall be referred to the Local Joint Adjustment Board.

The Local Joint Adjustment Board shall consist of an equal number of representatives of both the Union and the Employer, and both sides shall have an equal number of votes. Grievances not disposed of by the Local Joint Adjustment Board because of deadlock or a failure of such Board to act may be appealed jointly or by either party to an arbitrator within thirty (30) days of the Local Joint Adjustment Board's decision or failure to act. The arbitrator shall be selected mutually by the representatives of the Union and the Employer. If the parties are not able to agree on the selection of the arbitrator within six (6) days following receipt of a notice of submission by the aggrieved party or parties, Federal Mediation and Conciliation shall be contacted to submit a list of five (5) persons from which the parties shall select, by mutual agreement, the arbitrator. If the parties cannot agree on any of the five (5) names within three (3) days of the receipt of the list, the parties shall alternately strike names until only one name remains and the remaining name shall be the designed arbitrator. The Union will make the first strike. All decisions of the arbitrator shall be made and mailed to the parties within ten (10) days following the conclusion of the arbitration hearing, exclusive of the last day of such hearing.

SECTION 2. There shall be no stoppage of work or lockout while grievance and arbitration proceedings are pending, except as hereinafter otherwise set forth.

SECTION 3. The decision of the arbitrator shall be final and binding upon both parties and all persons and parties affected. Each party shall bear its own expenses and shall pay one-half (1/2) of the fees and expenses of the arbitrator.

SECTION 4. The provisions of this Article shall not apply to disputes arising out of the failure or refusal of the Employer to pay, when due, fringe fund contributions or other monetary benefits required by this Agreement, except where there is a bonafide dispute as to whether this Agreement applies, in which case the grievance procedure shall be used.

## ARTICLE XXIV
## STRIKE AND LOCK-OUTS

SECTION 1. Except as otherwise provided in this Agreement, the Union agrees that during the life of this Agreement it will not authorize any strike, work stoppage or slow-down. The Union also reserves the right to strike in the event the Employer fails or refuses to submit to the grievance and arbitration procedure, or comply with a decision or award under Article XXIII, the Employer agrees that it will not lock-out any or all of its employees. It is understood, however, that to the extent this Section permits self-help by the Union, it shall not apply to Article XIX, Section 2.

SECTION 2. In the event there is any unauthorized strike, slow-down, work stoppage or any other form of action which results in delay of any work, the Union agrees that if such action is unwarranted, it will use its best efforts to get the workmen back to work.

SECTION 3. With respect to the Union's obligation under Section 2 herein, it is agreed by and between the parties hereto that the Union's officers and agents shall not be liable in any manner whatsoever, either at law or in equity, for any unauthorized strike, slow-down, work stoppage or any other form of action which directly or indirectly results in delay or stoppage of work, nor shall the Union be held liable for any unauthorized act or activities of its officers, agents or members.

SECTION 4. No employee shall be disciplined, discharged or replaced because he honors or refuses to work behind a sanctioned picket line.

## ARTICLE XXVI
## APPRENTICESHIP

SECTION 1. All participants to the Apprentice Program must be registered with Roofers Union Local No. 70.

SECTION 2. Trainees shall be under the supervision of the Employer's journeyman at all times. No apprentice is permitted to work alone on any job in the jurisdiction of this Union. It is so stipulated and agreed that every Employer shall also cooperate in the rotating of apprentices in the various phases of the trade if necessary.

SECTION 3. Should any apprentice, after being accepted in the program, is unable to show any progress in his work, lacks the willingness to learn, the inability to function as a member of a roofing crew, or keep up with the other members of his class, he will be referred for review by the Joint Apprenticeship Training Committee (JATC).

SECTION 4. Apprentices may be used on a job at the rate of one apprentice for each two (2) journeyman, except where only two (2) men are required on a job then one may be an apprentice. Apprentices shall never be put in charge of work on any job, and shall always work under the supervision of at least one (1) journeyman until they have attained journeyman status.

SECTION 5. All contractors will abide by the rules set forth in the Apprenticeship Standards and any changes made by the Joint Apprenticeship Training Committee.

SECTION 6. The number of apprentices that may be used on any job shall be at the discretion of the Business Manager of the Union, as the journeyman on any job will have to control the number of apprentices that they can supervise and teach.

SECTION 7. The apprentice must fulfill apprentice requirements as determined by the JATC and outlined by the Apprentice Standards approved by the U.S. Department of Labor, Bureau of Apprenticeship and Training.

SECTION 8. There is a Joint Committee composed of members from both Employer and Union that are the said sponsors, to be known as the Joint Apprentice Training Committee, who is authorized to supervise and enact the rules and regulations necessary to govern the training of apprentices as future roofers.

SECTION 9. All such applicants for apprenticeship training must be classed as probationary apprentices or pre-apprentices until enrolled in the apprenticeship program.

## ARTICLE XXVII
## PIECE-WORK TOOLS, CREW SIZE

SECTION 1. There shall be no work by the members or applicants of this Union on a per-square or piece-work basis on any work covered by this Agreement.

SECTION 2. Journeyman roofers, 5th, 6th, and 7th class apprentices shall be required to furnish the following hand tools: hammer, insulation knife, roofing knife, screwdriver, adjustable wrench, rule, chalkline, trowel, nail apron, scissors, roller and tape. In the event the employee appears at the work site without the required tools, the Employer may elect to provide same and deduct the cost for same over two (2) pay periods. They shall not be required to furnish any form of transportation for men, materials, tools and/or equipment.

A. Apprentices 1st through 4th must have at least a hammer, knife and trowel.

B. All journeyman and apprentices must furnish and use proper clothing that meets Industry Safety Standards. It is understood, however, it shall be the responsibility of the Employer to insure the safety and health of its employees and compliance by them with any safety rules contained herein.

SECTION 3. When not applying roofing installation, but setting up jobs, closing down jobs or jobs where conditions warrant men on the job because of weather conditions or lack of material or various other reasons, the foreman and at least one journeyman roofer must be included among those remaining. If a steward is on the job, he shall have preference as the journeyman.

SECTION 4. No limitations shall be placed upon the amount of work which any employee shall perform during the working day, nor shall any rules, customs or practices be permitted which limit production or unnecessary increase in the time required to do the work.

## ARTICLE XXVIII
## MECHANICAL EQUIPMENT

SECTION 1. The Employer agrees that no employee will be required to operate or work in the vicinity of any machinery or equipment unless the machinery or equipment meets MIOSHA Standards and necessary training has been provided by the Employer. It is understood, however, that it shall be the responsibility of the Employer to insure compliance with such standards.

## ARTICLE XXIX
## DISCLAIMER OF UNION LIABILITY

SECTION 1. In accordance with the requirements of the Occupational Safety and Health Act of 1970, it shall be the responsibility of the Employer to insure the safety and health of its employees and compliance by them with any safety rules contained herein or established by the Employer. Nothing in this Agreement will make the Union liable to any employees or to any other persons in the event that injury or accident occurs. The employer agrees to hold the Union harmless for any act or omission hereunder.

SECTION 2. The Employer will not engage in any litigation against the Union on a subrogation theory or contribution theory, or otherwise, so as to obtain a money judgment in connection with any death or injury which occurs on the job sites covered by this Agreement.

SECTION 3. The Employer agrees that any action taken by the Union, its officers and manager, in carrying out its obligations under Section 1 hereof, shall be without liability on the part of the Union's officers and agents. The Employer specifically waives any right of action at law or in equity that may have respecting such liability against the Union and its officers.

SECTION 4. It is agreed by and between the parties hereto that the Union's officers and managers, shall not be liable in any manner whatsoever either at law or in equity, for any unauthorized strike, slow-down or work stoppage or any other form of action which directly or indirectly results in delay or stoppage of work; nor shall the Union be liable for any unauthorized acts or activities of its officers, managers or members. The Union, however, will use its best efforts to prevent same.

## ARTICLE XXX
## PERFORMANCE BOND

SECTION 1. The Union may require a performance bond from any contractor in accordance with the following rules:

A. (PURPOSE OF BOND): To unsure payment of wages, fringe benefits, union dues, and all Employer contributions due this Union that is covered under this Collective Bargaining Agreement.

B. The Bond may in the form of Cash, by certified Bonding Company or Irrevocable Letter of Credit from the Contractors Bank.

C. If the Bond is cash the amount of the bond will not exceed twenty thousand dollars ($20,000).

18

D. The Executive Board shall become the trustee of the deposited cash performance bond. The Board shall have the power to apply all, or any portion of the bond against delinquency which an Employer may incur.

E. The Employer may request reimbursement of the remaining bond money credited to the Employers account only after all wages, fringe benefits, and all required contributions due this Union are paid in full, and if the project is completed and the Employer is no longer performing work in the Roofers Local No. 70 area.

F. The Executive Board shall administer all performance bond funds, draw up a proper trust agreement, determine where funds shall be held and shall devise forms and procedures for withdrawing money from the fund.

SECTION 2. With regard to the Roofers Union Local No. 70 Pension Trust Fund, Roofers Union Local No. 70 Insurance Fund, Roofers Union Local No. 70 Apprentice Fund, Roofers Union Local No. 70 Vacation Fund and the Research and Training Fund, the Employer shall promptly furnish to the Union or its representatives or the Trustees or their agents, on request, any and all records of its employees concerning classification of such employees, their name, social security numbers, amount of wages paid and hours worked and any other payroll records and information that the Union or the Trustees may require in the connection with administration of the Trust Funds, and for no other purpose. The Union or its Representatives or the Trustees or their agents may examine the payroll books and records of the Employer whenever such examination is deemed necessary or advisable by the Union or the Trustees in connection with the proper administration of the above named Trust Funds.

A. In the event the Employer does not comply with the provisions in Section 2, above within seventy-two (72) hours after having been notified by certified mail of the Union's or the Trustee's desire to audit the Employer's books, the Union shall have the right to strike.

B. In the event that the Employer has failed to make proper contributions to the trust funds named in Section 2 above, the Employer agrees to accept financial responsibility for the cost of the audit involved in discovering such shortage or discrepancy; and the cost to the Union or the Trustee's of collection, including the attorney fees.

C. In the event that the Employer does not make full payment of any shortage or delinquency in contribution payments to the funds named in Section 2 above, within seven (7) days, the Union shall have the right to strike.

D. The amount of hourly contributions may change periodically by a vote of the Union membership.

E. If an audit proves that the contractor has willfully evaded paying the proper money into any of the Local 70 Funds, the bonds may be cashed to pay for the loss to the funds.

F. Contractors who keep their records outside the state of Michigan may either produce the books to the auditor in Michigan or pay all expenses for the auditor to travel to the appropriate state to perform the audit.

G. Any contribution to any of the Trust Funds named herein which is delinquent by more than five (5) days from the deposit due date shall be subject to a delinquent charge of ten percent (10%) of the amount of delinquent contribution. Any contribution that is not paid to the respective Trust

Fund within five (5) days of the deposit due date shall be subject to an interest charge to be computed at the highest legal rate from the due date until the date received by the Trust Fund.

H. The deposit due date for monthly contributions for all the Trust Funds named in this Agreement shall be no later than the tenth (10th) day of each month for the employee hours worked the preceding month. All monthly contributions shall be made to Roofers Union 70 Benefits Office or as the Trustees may direct. All contributions shall be accompanied by a completed, signed and dated monthly contractor payroll report.

 1. Any dispute regarding bonds, contribution, penalties or interest shall be resolved by the Joint Adjustment Board, provided however that payment of the contribution, penalty and interest must be made prior to appeal.

 2. Penalty and interest will be billed to the Employer by the Trust Fund Administrator for payment.

 3. All penalties, interest and cost of collection shall be reimbursed to the respective Trust Funds based on the proportion of contributions due each Trust Fund.

 4. Employer agrees to make contributions to various Trust Funds for all employees from the first (1st) day of employment.

 5. The amount paid into each fund may be changed by the Union membership, however money moved from a non-tax status to a taxable status must be approved by the contractors.

I. The Employer shall be bound by all rules and directives of said Trust Funds as set from time to time by the Trustees of said Funds.

## ARTICLE XXXI
## VACATION FUND

SECTION 1. In addition to the wage rate explained in Article VI, Wage and Benefits "Schedule A", of this Agreement, both parties to this Agreement have so stipulated and all co-signatories must also agree that an additional contribution shall be paid according to classification of current pay scale, as shown on the appropriately dated Wage and Benefits "Schedule A". The rate for every hour worked by an employee from the Union shall be contributed to the Vacation Fund by the Tenth (10th) of the monthly following that in which the hours were worked, and sent to the Roofers Union Local 70 Benefits Funds Office, on forms furnished by the Union or approved by the Union, for the proper recording of name, social security number and the hours worked. New hires (employees who have no previous union hours) will not receive vacation pay until they have worked one thousand (1,000) union hours.

SECTION 2. Failure to comply fully with the provisions of the above section could result in the removal of all eligible employees affected by this Agreement who are working for the said Employer, including any employees from a sister Local who might be on that job, until such time as all payments have been made, including the stated amount of liquidated damages and interest that is listed on the Trust Documents for this Local.

SECTION 3. It is agreed that these Employer contributions are over and above the scheduled employee wages and/or expenses provided for in this Agreement.

SECTION 4. The Trustees of this Local, composed of members from both parties to this Agreement, shall have the sole determination as to the methods employed to assure all eligible workers the sum due them will be paid as describe in the Summary Plan Description.

SECTION 5. Vacation pay shall be included in the gross pay of the workmen covered by this Agreement. This gross amount shall be taxed then deducted, and the full amount shall be sent to the Roofer Union Local 70.

## ARTICLE XXXII
## INSURANCE FUND

SECTION 1. It shall be recognized by both parties to this Agreement that there has been established an Insurance Fund governed by the Trustees of this Union and the Employer to secure a group insurance plan. The benefits of the plan are detailed in the Trust Agreement and Summary Plan Description of this Local.

SECTION 2. In addition to other Employer contributions on the appropriately dated Wage and Benefits "Schedule A", the Employer agrees to pay as shown on the appropriately dated Wage and Benefits "Schedule A" for each hour worked by our members and/or applicant members the contribution rate for the Insurance Trust. These contributions are to be sent to the Roofers Union Local 70 Benefits Office. Contributions shall not be required for the first thirty (30) days for Employees, who do not have previous union roofing hours.

SECTION 3. It is agreed that these Employer contributions are over and above the scheduled employee wages and/or expenses.

SECTION 4. The contributions in accordance with the individual hours worked by each employee shall be due from the Employer not later than the tenth (10th) day of the month following that in which the employee worked. If any Employer fails to make such contributions by the due date, it shall be held liable under this Agreement to its employees individually for any benefits lost under their insurance policy or any other plan adopted by said Union Local that might be jeopardized by reason of the Employer's failure to contribute properly.

## ARTICLE XXXIII
## PENSION FUND

SECTION 1. The Employer agrees to be bound by the terms and conditions of the Roofers Union Local No. 70 Pension Fund Trust Agreement and Summary Plan Description.

SECTION 2. The Employer agrees to pay to the Pension Fund, as shown on the appropriately dated Wage and Benefits "Schedule A" for each hour worked by employees covered by this Agreement, and remit same to Roofers Union Local 70 Benefits Office no later than the tenth (10th) day of the month following that in which the employees worked.

SECTION 3. The Union shall have the option to consider such delinquency or failure as an immediate breach of this Collective Bargaining Agreement and to strike until all delinquent payments are paid in full.

## ARTICLE XXXIV
## APPRENTICE FUND

SECTION 1. The Employer agrees to be bound by the terms and conditions of the Roofers Union Local No. 70 Apprenticeship Fund Trust Agreement.

SECTION 2. The Employer agrees to pay to the Pension Fund, as shown on the appropriately dated Wage and Benefits "Schedule A" for each hour worked by employees covered by this Agreement, and remit same to Roofers Union Local 70 Benefits Office no later than the tenth $(10^{th})$ day of the month following that in which the employees worked.

SECTION 3. The Union shall have the option to consider such delinquency or failure as an immediate breach of this Collective Bargaining Agreement and to strike until all delinquent payments are paid in full.

## ARTICLE XXXV
## RESEARCH AND EDUCATION FUND

SECTION 1. The Fund – There has been established a Trust Fund known as the Roofers and Waterproofers Research and Education Joint Trust Fund (referred to as the "Fund").

SECTION 2. Employer Contributions – Effective on the undersigned date of execution, the Employer agrees to pay to the Fund the sum as described in the properly dated Wage and Benefits "Schedule A" per hour earned for each bargaining unit employee covered by and working under this agreement for each hour or part thereof paid. The obligation to contribute shall continue during any period when a new collective bargaining agreement is being negotiated.

SECTION 3. Payments – The payments referred to in Section 2 above shall be made on or before the 10th day of the month following the month in which the payment determining the contribution was made or such other time(s) as shall be from time to time determined by the Trustees of the Fund.

SECTION 4. Employer Bound by Agreement and Declaration of Trust – The Employer agrees to be bound by the Agreement and Declaration of Trust creating the Fund and by any future amendments thereto, and hereby designates the present Employer Trustees as its representatives on the Board of Trustees, together with their successors selected in the manner provided in said Agreement and Declaration of Trust, as the same may be amended from time to time, and further agrees to be bound by all action taken by said Trustees pursuant to said Agreement and Declaration of Trust as amended from time to time.

SECTION 5. Employer Records – The Employer agrees to make available to the Trustees or their designee during normal business hours all payroll records and other employment records necessary to ascertain that contributions required under this Article have been paid correctly and in full. In any such case, the Employer will be given at least two (2) weeks advance notice of the date on which such records are to be made available.

## ARTICLE XXXVI
## FUND PAYMENTS AND CONTRIBUTIONS: REPORTING

SECTION 1. The Employer agrees to conform in all respects with the applicable Agreement and Declaration of Trust for each of said Funds and all amendments thereto, as well as with the administrative rules promulgated from time to time by the Trustees of said Funds as fully as if the same were set forth in detail herein.

SECTION 2. Payments and contributions to the Funds on behalf of employees, as designated in Articles, XXXI, XXXII, XXXIII, XXXIV and XXXV of this Agreement shall be remitted monthly in the form of a single payment written payable to the Trustee of said Funds. Remittances so made by the Employer shall

constitute fulfillment of the Employer's obligation to make payments and contributions to the Funds herein specified.

SECTION 3. In the event that the Employer shall become delinquent in, or fail to make the payments and contributions as required herein, such delinquency or failure shall not be subject to arbitration, and Roofers Local Union No. 70 shall consider such delinquency or failure as an immediate breach of this Collective Bargaining Agreement.

SECTION 4. The Employer shall make available to all the Funds any and all records of the covered employees that the said Funds may require in connection with the sound and efficient operation of said Funds.

SECTION 5. All fringe benefits, including, but not limited to the Pension Fund, Vacation Fund, Apprenticeship Fund, Insurance Fund and Research and Training Fund shall be submitted on provided monthly report forms which shall include payment, and must be postmarked by the 10th day of the month following the month being reported. Any report postmarked later than the 10th day shall be considered delinquent. Delinquent Employers will be assessed liquidated damages of ten percent (10%) of the amount of moneys due and twelve percent (12%) interest, or ten dollars ($10.00), whichever is the greater amount.

SECTION 6. Employers are subject to audit, and delinquent Employers must reimburse the Funds for the cost of such audit. If legal action is necessary to collect any sums due or damages under this Section, the Employer, in such event, shall also pay all court costs and reasonable attorney's fees incurred in the prosecution of such action.

## ARTICLE XXXVII
## FAVORED NATION

The Union will not extend or permit in any company or association within the territorial jurisdiction of this Agreement, any base rates, fringe benefit cost or working conditions more favorable to an Employer than those contained in this Agreement, unless same be granted to all signatory contractors of Local No. 70 Ann Arbor Area. The Union will report to all signatory contractors any new conditions, rates or fringes differing from those expressed in this Agreement. Project Agreements negotiated by building trade organizations are excluded from the Favored Nation clause.

## ARTICLE XXXVIII
## DISCLAIMER OF UNION LIABILITY

In accordance with the requirements of the Occupational Safety and Health Act of 1970, it shall be the responsibility of the Employer to insure the safety and health of its employees and compliance by them with any safety and health of its employees and compliance by them with any safety rules contained herein or established by the Employer. Nothing in this Agreement will make the Union liable to any employee or to any other persons in the event that injury or accident occurs.

## ARTICLE XXXIX
## ENTIRE MEMORANDUM OF AGREEMENT

This Agreement has been reached as a result of collective bargaining, represents the full and complete Agreement between the parties, and supersedes all previous Agreements between the parties. Any supplemental amendments to this Agreement or past practices shall not be binding upon either party unless executed in writing by the parties hereto. This Agreement shall supersede any rules, regulations, or practices of the Employer which are contrary to or inconsistent with its terms.

## ARTICLE XL
## TERMINATION OF AGREEMENT

This Agreement shall be in full force and effect from JUNE 1, 2009 and including MAY 31, 2011 and shall continue in full force and effect from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other at least SIXTY (60) days prior to the date of expiration. Since it is the intention of the parties to settle and determine, for the terms of this Agreement, all matters constituting the proper subjects of collective bargaining between them, it is expressly agreed there shall be no re-opening of this Agreement for any matter pertaining to hours of work, or other terms and conditions of employment or otherwise, during the term of this Agreement unless mutually agreed upon.

## ARTICLE XLI
## SIGNATURES

IN WITNESS AND TESTIMONY on the provisions and terms mutually agreed upon and specified herein, the duly authorized officers and representatives of both parties hereby affix their signatures.

Smith-Graham Roofing
850 Emmett Street
Battle Creek, MI 49017
(269) 963-2238 – Phone
(269) 963-5126 – Fax

_____
Signature

President
_____
Title

Terry L Cleland
_____
Print Name

July 22 2009
_____
Date

Roofers Union Local 70
PO Box 116
Howell, MI 48844-0116
(517) 548-6554 – Phone
(517) 548-5358 – Fax

_____
Signature

~~Trustee~~ Deputy Trustee
_____
Title

~~Robert Peterson~~ Eric Anderson
_____
Print Name

7/22/09
_____
Date